This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-35407**

**STATE OF NEW MEXICO,**

>      Plaintiff-Appellee,

v.

**RAFAEL LUCERO,**

>      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Rafael Lucero appeals his convictions for false imprisonment and aggravated battery against a household member. Defendant makes two arguments on appeal: (1) double jeopardy barred conviction for both offenses because the false imprisonment was incidental to the aggravated battery; and (2) there was insufficient evidence to convict him of false imprisonment. Unpersuaded, we affirm.

**BACKGROUND**

**{2}**     Given that the parties are familiar with the facts and details of this case, we only briefly set forth pertinent facts and applicable law in this memorandum opinion, reserving further discussion of specific facts where necessary to our analysis. *See* Rule 12-405(B) NMRA (providing that appellate courts "may dispose of a case by non-precedential order, decision or memorandum opinion" under certain circumstances); *State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361 ("[M]emorandum opinions are not meant to be cited as controlling authority because such opinions are written solely for the benefit of the parties[, and s]ince the parties know the detail of the case, such an opinion does not describe at length the context of the issue decided[.]").

**{3}**     On the night in question, Victim, Defendant, and a third party were drinking together, and the third party passed out prior to the incident. Victim testified that Defendant said to Victim that they should go to the room because she had told Defendant that morning that she would have sex with him, although she did not want to do so. Victim and Defendant went to the room, and Defendant began hitting Victim in the face, head, and chest. At some point, Victim blacked out, and when she came to, she testified that Defendant had his knees on her shoulders and arms, making it impossible for her to get away. According to Victim's testimony, prior to blacking out, she had been wearing jeans; after coming to, she was no longer wearing pants. Victim eventually told Defendant to get off of her because she had to use the bathroom, and when she left to use the bathroom, she grabbed a phone to call 911. Once Victim called 911, she was apparently able to go outside.

**DISCUSSION**

**I.     Defendant's Convictions of False Imprisonment and Aggravated Battery Do Not Violate Double Jeopardy**

**{4}**     On appeal, Defendant contends that the alleged false imprisonment was incidental to the battery and that convicting Defendant of false imprisonment and battery violated his right to be free from double jeopardy. In support of his argument, Defendant relies on *State v. Trujillo*, 2012-NMCA-112, ¶ 1, 289 P.3d 238, wherein this Court agreed with the defendant's argument that the "Legislature did not intend to punish as kidnapping restraint or movement that is merely incidental to another crime." However, we are not persuaded that the reasoning employed in *Trujillo* is applicable in this case because *Trujillo* deals specifically and exclusively with the offense of kidnapping, *see id.* ¶ 39, and in any case, the false imprisonment was sufficiently separated in time and place from the battery on a household member such that it was not incidental.[1]

---

[1]Defendant notes that his reliance on *Trujillo* raises an issue that rests somewhere between double jeopardy and sufficiency of the evidence. However, because the analysis regarding incidental restraint undertaken in *Trujillo* bears striking resemblance to the unitary conduct analysis conducted for double jeopardy, to the extent Defendant

**{5}**     "The Double Jeopardy Clause has been held to incorporate a broad and general collection of protections against several conceptually separate kinds of harm: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Cummings*, 2018-NMCA-055, ¶ 6, 425 P.3d 745 (internal quotation marks and citation omitted). "We generally apply a de novo standard of review to the constitutional question of whether there has been a double jeopardy violation." *Id.*

**{6}**     In the present matter, the relevant question is whether Defendant's conviction for false imprisonment and aggravated battery against a household member constitutes multiple punishments for the same offense, i.e., whether Defendant's same conduct violated both statutes. "For the double jeopardy prohibition against multiple punishments, there are two types of cases: (1) when a defendant is charged with violations of multiple statutes for the same conduct, referred to as 'double description' cases; and (2) when a defendant is charged with multiple violations of the same statute based on a single course of conduct, referred to as 'unit of prosecution' cases." *Id.* ¶ 7. Defendant's arguments raise only double description issues.

**{7}**     "For double description cases, we apply the two-part test set forth in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223: (1) whether the conduct is unitary; and (2) if so, whether the Legislature intended to punish the offenses separately." *State v. Simmons*, 2018-NMCA-015, ¶ 25, 409 P.3d 1030. "When determining whether [the d]efendant's conduct was unitary, we consider whether [the d]efendant's acts are separated by sufficient indicia of distinctness." *State v. DeGraff*, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61 (internal quotation marks and citation omitted). "Conduct is unitary when not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished." *State v. Silvas*, 2015-NMSC-006, ¶ 10, 343 P.3d 616.

**{8}**     We note that *Trujillo* applies strictly to the offense of kidnapping. *See* 2012-NMCA-112, ¶ 39. Defendant argues that *Trujillo* should control this matter. Defendant claims that "[b]oth the logical underpinnings of *Trujillo*'s incidental-restraint limitation on kidnapping and the policy reasons behind it require extension of the limitation on kidnapping to false imprisonment as well." Defendant points out that "[t]he only difference between kidnapping and false imprisonment is the mens rea—not the actus reus." However, this is quite a significant difference.

**{9}**     In *Trujillo*, we specifically emphasized that we were analyzing whether the Legislature intended the defendant's conduct in that case to constitute kidnapping. *Id.* ¶ 42. Indeed, the approach this Court took in *Trujillo* was premised on the history of the kidnapping statutes and the serious nature of that offense. *See id.* ¶¶ 23-30. In *Trujillo*, we recognized that these considerations distinguish kidnapping from the lesser included offense of false imprisonment. *Id.* ¶¶ 26-27, 29-30, 41. Therefore, we are unpersuaded

---

is raising both a sufficiency claim based on incidental conduct and a double jeopardy claim, we resolve both within our double jeopardy analysis.

by Defendant's argument that we should apply *Trujillo* to false imprisonment under the factual landscape of the instant case.

**{10}**    Nevertheless, we briefly address Defendant's argument—that the false imprisonment was incidental to the aggravated battery against a household member. The jury was instructed to convict Defendant of false imprisonment if it found, in pertinent part, that he "confined [Victim] against her will." To convict Defendant of aggravated battery against a household member, the jury was instructed that it must find, in pertinent part, that "Defendant touched or applied force to [Victim] by punching her in the forehead and beating her about her head and face area with a closed fist" and Defendant "intended to injure [Victim]." Here, Defendant confined Victim when he put his knees on her shoulders and arms and she was not able to get away. This restraint occurred separately from the hitting episode, which was the aggravated battery when Defendant beat her about the head and face area. This is distinct from the confinement that occurred when Defendant held Victim down with his knees. Again, Victim testified that, prior to blacking out, she had been wearing jeans; after coming to, she was no longer wearing pants. This evidence supports a theory that Victim was blacked out for enough time for Defendant to remove her pants, further separating in time the initial aggravated battery from the false imprisonment caused by Defendant confining Victim by using his knees on her shoulders and arms. *See State v. Armendariz*, 2006-NMCA-152, ¶ 4, 140 N.M. 712, 148 P.3d 798 (explaining that, even in a de novo double jeopardy review, "[w]e indulge in all presumptions in favor of the verdict when reviewing the facts" (internal quotation marks and citation omitted)). Because discrete acts underlie the convictions and because the offenses were completed at different points in time, the restraint was not merely incidental to the battery and was therefore not unitary. *See Silvas*, 2015-NMSC-006, ¶ 10; *DeGraff*, 2006-NMSC-011, ¶ 27 ("In our consideration of whether conduct is unitary, we have looked for an identifiable point at which one of the charged crimes had been completed and the other not committed.").

**{11}**    Because we conclude that Defendant's conduct was not unitary, we need not consider whether the Legislature intended false imprisonment to be a separately punishable offense. *See Silvas*, 2015-NMSC-006, ¶ 9 ("Only if the first part of the test is answered in the affirmative, and the second in the negative, will the [D]ouble [J]eopardy [C]lause prohibit multiple punishment in the same trial." (internal quotation marks and citation omitted)).

## II.    Defendant's Conviction for False Imprisonment Was Supported by Substantial Evidence

**{12}**    In addition to his argument that the evidence was insufficient because the restraint used for false imprisonment was incidental, Defendant contends that there was insufficient evidence to support false imprisonment because the State failed to prove that the restraint was against Victim's will. It seems Defendant argues that because Victim was blacked out and apparently awoke to Defendant confining her, and because Defendant allowed her to get up to go to the bathroom, that it was possible that the confinement did not occur without her permission. Defendant additionally argues that he

restrained Victim because she was attacking him and, as a result, he suffered injuries. Defendant's arguments are unpersuasive.

**{13}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). Lastly, on appeal, we "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences . . . in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

**{14}** We note that the jury was free to infer from the circumstances surrounding Defendant's restraint of Victim that the restraint was against Victim's will. *See State v. Barrera*, 2002-NMCA-098, ¶ 13, 132 N.M. 707, 54 P.3d 548 ("At a minimum, [the d]efendant's restraint of [the v]ictim in conjunction with his commission of criminal acts of violence permit a reasonable jury inference that [the d]efendant knew he had no such authority to restrain [the v]ictim."). Furthermore, the fact that Defendant let Victim go did not preclude the jury from determining that the restraint was against Victim's will, as "[t]he restraint need be for only a brief time." *State v. Corneau*, 1989-NMCA-040, ¶ 12, 109 N.M. 81, 781 P.2d 1159. Finally, to the extent Defendant contends that he was acting in self-defense, the jury was free to reject his version of events. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts."). Based on the facts articulated earlier in this opinion, we conclude that there is sufficient evidence to support Defendant's conviction for false imprisonment.

**CONCLUSION**

**{15}** For the foregoing reasons, we affirm.

**{16}** **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES, Judge**